OPINION
{¶ 1} Defendant-appellant, Howard Cohen (Cohen), appeals his conviction and sentence in Youngstown Municipal Court for violating a protection order. He argues (1) that his no contest plea was not made knowingly, intelligently, or voluntarily and (2) that the trial court abused its discretion by not considering the factors in R.C. 2929.22
before sentencing him to sixty days in jail.
 {¶ 2} On July 4, 2006, Deputy Antonucci and Deputy Green were working at B.J. Alan Fireworks. Cohen was there also and had been asked by one of the deputies to leave the premises at the request of the owner and management. Cohen insisted that the owner did not want him to leave and kept trying to see the owner to speak with him. Deputy Antonucci was able to persuade Cohen to leave, but left furious. The next day, Cohen went to the Mahoning County Courthouse in order to make a complaint against Deputy Antonucci. As Deputy Antonucci's supervisor, Deputy Green told Cohen he could make an Internal Affairs report which he would have to sign. Cohen did not want to do that and left visibly upset.
 {¶ 3} Approximately a month later, Deputy Green arrived home from work and was informed by his neighbor that Cohen had been to his home. He parked in front of Deputy Green's home, blasted loud music, and repeatedly honked his car horn. Cohen informed another of Deputy Green's neighbors that he was disappointed about how Deputy Green had handled the situation, alleging that he had "blew him off." (Tr. 7.) When he was leaving, Cohen told the neighbor to let Deputy Green know that he was "going to pay severely." (Tr. 8.)
 {¶ 4} Cohen was charged with retaliation and Deputy Green got a protection order for himself and his family against Cohen. The protection order included a prohibition against carrying weapons such as knives. On August 22, 2006, Cohen *Page 3 
went to the Mahoning County Courthouse for a pretrial hearing concerning the retaliation charge. Cohen entered the courthouse with two knives on him and presented them to the deputy working the metal detector.
 {¶ 5} On August 23, 2006, Cohen was charged in Youngstown Municipal Court with carrying concealed weapons, in violation of R.C. 2923.12(A), a first-degree misdemeanor, and violating a protection order, in violation of R.C. 2919.27, also a first-degree misdemeanor. Cohen initially pleaded not guilty to both charges. On January 8, 2007, a plea hearing was held and Cohen and plaintiff-appellee, State of Ohio, entered into a Crim.R. 11 plea agreement. Cohen agreed to plead no contest to violating a protection order. In exchange, the State agreed to dismiss the carrying concealed weapons charge and recommend probation. The trial court accepted Cohen's no contest plea. Contrary to the State's recommendation, the court sentenced Cohen to sixty days in jail with intensive probation to follow for eighteen months. Subsequently, the trial court granted Cohen's motion to suspend execution of sentence and to continue bond. This appeal followed.
 {¶ 6} Cohen raises two assignments of error, the first of which states:
 {¶ 7} "THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S NO CONTEST PLEA WHICH WAS NOT MADE KNOWINGLY, INTELLIGENTLY OR VOLUNTARILY."
 {¶ 8} Cohen argues that the trial court failed to inform him of his right to compulsory process or right to a jury trial. Cohen also argues that his plea was rendered involuntary because the trial court did not inform him that it was not bound by the recommended sentence of the plea agreement.
 Effect of No Contest Plea *Page 4 {¶ 9} Depending on the offense, Crim.R. 11 governs what information the trial court must inform a criminal defendant of. Misdemeanor cases involving "serious offenses" are governed by Crim.R. 11(D). Misdemeanor cases involving "petty offenses" are governed by Crim.R. 11(E). Crim.R. 2 provides the following definitions:
 {¶ 10} "(C) `Serious offense' means any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months.
 {¶ 11} "(D) `Petty offense' means a misdemeanor other than serious offense."
 {¶ 12} Cohen pleaded no contest to violating a protection order in violation of R.C. 2919.27. It is a first-degree misdemeanor subject to a sentence of one hundred eighty days. R.C. 2919.27(B)(2); R.C.2929.24(A)(1). Thus, it is a petty offense. Crim.R. 2(D).
 {¶ 13} Since he was charged with two first-degree misdemeanors, Cohen maintains that he was subjected to a possible maximum sentence of 180 days on each. Therefore, Cohen contends that his case is a misdemeanor case involving a "serious offense" subjecting his plea to the more rigorous requirements of Crim.R. 11(D). Citing State v. Moore (1996),111 Ohio App.3d 833, 835, 677 N.E.2d 408, and State v. Price (Nov. 27, 1998), 7th Dist. No. 97 C.A. 91. In other words, because the maximum possible sentence he faced was over six months, he attempts to effectively transform two petty offenses into one serious offense.
 {¶ 14} Cohen's argument in this regard is completely misguided.Moore and Price both were cases where the defendant was pleading to at least two first-degree misdemeanors, subjecting them to a possible one-year term of incarceration. Here, Cohen was only pleading to the violating a protection order charge. Under the terms of the Crim.R. 11 plea agreement, the State was dismissing the carrying concealed weapons charge. He never changed his not guilty plea regarding that charge and it was apparent that he had no intention of doing so. Consequently, as indicated earlier, Cohen's case is a misdemeanor case involving a "petty offense." Crim.R. 2(D). *Page 5 
 {¶ 15} Returning then to Crim.R. 11(E), it provides: "In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty."
 {¶ 16} Crim.R. 11(B) is titled "Effect of guilty or no contest pleas" and provides, in relevant part:
 {¶ 17} "With reference to the offense or offenses to which the plea is entered:
 {¶ 18} "(1) The plea of guilty is a complete admission of the defendant's guilt.
 {¶ 19} "(2) The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."
 {¶ 20} This court had concluded that a trial court complies with Crim.R. 11(E) by informing the defendant of the information contained in Crim.R. 11(B). State v. Jones, 7th Dist. No. 05-MA-69, 2006-Ohio-3636;State v. Howell, 7th Dist. No. 04-MA-31, 2005-Ohio-2927; State v.Thompson, 7th Dist. No. 03-MA-247, 2005-Ohio-6448; State v. Logue, 7th Dist. No. 02-BE-29, 2004-Ohio-387. In other words, when reviewing whether a trial court complied with Crim.R. 11(E), we simply determine whether the trial court informed the defendant of the information in Crim.R. 11(B).
 {¶ 21} Other appellate courts, however, had held that a trial court substantially complies with Crim.R. 11(E) by notifying the defendant of the maximum penalties that could result from the plea and the waiver of the right to a jury trial that results from the plea. See State v.Horton-Alomar, 10th Dist. No. 04AP-744, 2005-Ohio-1537; State v.Raby, 2d Dist. No. 2004-CA-88, 2005-Ohio-3741.
 {¶ 22} This conflict in approaches was illuminated by this court's July 2006 decision in State v. Jones, 7th Dist. No. 05-MA-69,2006-Ohio-3636. Defendant-appellant, Joseph Jones, Sr., (Jones) was charged with three counts of domestic violence, first-degree misdemeanors in violation of R.C. 2919.25. Jones filed a motion to dismiss based on the unconstitutional application of the domestic violence *Page 6 
statute in light of the passage of Section 11, Article XV of the Ohio Constitution.[1] Nonetheless, Jones subsequently appeared in court for his trial date and changed his plea to guilty to one count of domestic violence.
 {¶ 23} Jones served his ten-day jail sentence and then filed a motion to stay the balance of his sentence pending appeal. He also filed a motion to withdraw his guilty plea, pursuant to Crim.R. 32.1. This court issued a limited remand so that the trial court could rule on Jones' motion to vacate his guilty plea. The trial court held a hearing on the motion and subsequently denied it. Jones then filed another timely notice of appeal.
 {¶ 24} Jones argued that the trial court erred in accepting his plea because the court failed to inform him of the effect of the plea of no contest. He contended that because the court failed to inform him of the effect of a no contest plea, he was not apprised that he could have challenged the validity of the domestic violence statute on appeal if he pled no contest instead of guilty. He also argued that the trial court abused its discretion in denying his motion to withdraw his guilty plea.
 {¶ 25} After examining the plea colloquy, this court found that the trial court went to great lengths to inform Jones of certain constitutional rights he was waiving by pleading guilty (e.g., the right to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the State to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself). Nevertheless, this court observed that it never informed him of the effect of his guilty plea or the effect of a no contest plea as is required by Crim.R. 11(B), Crim.R. 11(E), and State v. Watkins, 99 Ohio St.3d 12, *Page 7 788 N.E.2d 635, 2003-Ohio-2419 (i.e., that a plea of no contest is not an admission of his guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against him in any subsequent civil or criminal proceeding). Thus, this court concluded that Jones had not entered his plea knowingly, voluntarily, and intelligently. We reversed the trial court's judgment, vacated Jones' plea, and remanded the case for further proceedings. Jones' assignment of error concerning the motion to withdraw the plea was rendered moot.
 {¶ 26} Subsequently, this court certified a conflict on the issue stated as follows:
 {¶ 27} "Whether a trial court complies with Crim.R. 11(E) by simply notifying a defendant of the effect of his/her plea as set out in Crim.R. 11(B) or whether the trial court complies with Crim.R. 11(E) by notifying a defendant of the maximum penalties that could result from a plea and that the defendant waives his/her right to a jury trial by entering a plea but does not notify a defendant of the effect of his/her plea."
 {¶ 28} The Ohio Supreme Court determined that a conflict existed and consolidated the case with the other conflict cases of State v.Horton-Alomar, 10th Dist. No. 04AP-744, 2005-Ohio-1537, and State v.Raby, 2d Dist. No. 2005-CA-88, 2005-Ohio-3471.
 {¶ 29} Again, on appeal to the Ohio Supreme Court, Jones argued that his guilty plea was invalid because he was not informed of the effect of both a guilty and a no contest plea by the trial court. In other words, he argued that the trial court was required to recite both Crim.R. 11(B)(1) and (2) before accepting his guilty plea. After a lengthy analysis of Crim.R. 11, the Court rejected Jones' argument. In State v.Jones, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, at paragraphs one and two of the syllabus, it held as follows:
 {¶ 30} "In accepting a plea to a misdemeanor involving a petty offense, a trial court is required to inform the defendant only of the effect of the specific plea being entered. Crim. R. 11(E) construed. *Page 8 
 {¶ 31} "To satisfy the requirement of informing a defendant of the effect of a plea, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B)."[2]
 {¶ 32} The Court recited the plea colloquy and noted that the trial court had engaged Jones in a "lengthy inquiry." However, the Court focused on the absence of the Crim.R. 11(B)(1) language. Despite the "requirements" that the Court set out in the syllabi, it took an extra step in its analysis to examine Jones' case for the "requirement to show prejudice."
 {¶ 33} The Court acknowledged that a trial court should "adhere scrupulously" to the provisions of Crim.R. 11. Id. at ¶ 56, quotingState v. Stewart (1977), 51 Ohio St.2d 86,93, 5 O.O.3d 52,364 N.E.2d 1163. However, the Court also seemed to qualify that admonition by noting that the "failure to comply with nonconstitutional rights" such as the information in Crim.R. 11(B)(1) would "not invalidate a plea unless the defendant suffered prejudice." (Emphasis added.) Id. at ¶ 52, quoting State v. Griggs, 103 Ohio St.3d 85, 2004-Ohio-4415,814 N.E.2d 51, at ¶ 12. Concerning what constituted prejudice, it noted simply that the test for prejudice is "whether the plea would have otherwise been made." Id., quoting State v. Nero (1990),56 Ohio St.3d 106, 108, 564 N.E.2d 474.
 {¶ 34} Examining Jones' case for prejudice, the Court went on as follows:
 {¶ 35} "Jones contends that he was not aware that he was forfeiting the right to challenge, on appeal, the constitutionality of the domestic violence statute after the passage of Section 11, Article XV of the Ohio Constitution. However, Jones's motion to dismiss on that issue was pending at the time he entered his guilty plea. Instead of allowing the trial court to rule upon the motion to dismiss, or going forward with the jury trial that was scheduled to begin that morning, Jones signed a `Waiver of Rights Upon Plea' form, which stated `I enter my Plea after being fully advised of the potential penalties that I face and the effect of entering a Plea of Guilty or No *Page 9 
Contest.' He also signed the judgment entry of conviction, which stated that he had waived the introduction of evidence and stipulated to a finding of guilty.
 {¶ 36} "Jones presented no evidence that at the time of his guilty plea he claimed innocence. Under Griggs, any error by the trial court in failing to adequately inform him of the effect of his plea was not prejudicial because Jones did not assert his innocence at the colloquy. He is, therefore, presumed to understand that a plea of guilty is a complete admission of guilt. 103 Ohio St.3d 85, 2004-Ohio-4415,814 N.E.2d 5, ¶ 19. At the plea hearing, his attorney explained why Jones was entering the guilty plea: `In order to spare this family any further grief he's agreed to enter this plea today and accept responsibility for his actions in this case.' Jones also never asserted at the hearing that he wished to pursue the constitutional issue on appeal.
 {¶ 37} "We hold that, under the totality of the circumstances, Jones was aware that a plea of guilty was a complete admission of guilt, and that he was not prejudiced by the trial court's failure to inform him of Crim.R. 11(B)(1)." (Footnote omitted.) Id. at ¶ 53-55.
 {¶ 38} Turning now to an application of Jones to this case, before accepting Cohen's plea, the trial court engaged in the following relevant colloquy with him:
 {¶ 39} "THE COURT: MR. COHEN, LET ME REVIEW SOME THINGS WITH YOU. IF I ALLOW YOUR CARRYING CONCEALED WEAPONS CHARGE TO BE DISMISSED, THAT LEAVES YOU WITH A CHARGE OF VIOLATING THE TERMS OF A PROTECTION ORDER, WHICH IS PUNISHABLE BY UP TO SIX MONTHS IN JAIL, FINE OF UP TO A THOUSAND DOLLARS CAN BE IMPOSED; UP TO 500 HOURS OF COMMUNITY SERVICE CAN BE ORDERED, PLUS COMMUNITY CONTROL STATUS UNDER ANY NUMBER OF CONDITIONS.
 {¶ 40} "DO YOU UNDERSTAND ALL THAT?
 {¶ 41} "THE DEFENDANT: Yes, ma'am.
 {¶ 42} "THE COURT: THIS PLEA FORM SAYS THAT YOU'RE PLEADING NO CONTEST TO A CHARGE OF VIOLATING THE TERMS OF A PROTECTION ORDER. DID YOU SIGN THIS? *Page 10 
 {¶ 43} "THE DEFENDANT: Yes, I did.
 {¶ 44} "THE COURT: DID YOU TALK IT OVER WITH YOUR LAWYER FIRST?
 {¶ 45} "THE DEFENDANT: Yes, I did.
 {¶ 46} "THE COURT: WELL, IF YOU'RE PLEADING NO CONTEST, YOU'RE SAYING THAT YOU'RE NOT CONTESTING THIS CHARGE; YOU'RE ALLOWING ME TO FIND THAT YOU DID VIOLATE THE TERMS OF THE PROTECTION ORDER WITHOUT GOING THROUGH A TRIAL AND BEING PROVEN GUILTY OF DOING THAT, SO YOU'RE GIVING UP YOUR RIGHT TO BE PROVEN GUILTY OF THIS CHARGE BY PROOF BEYOND A REASONABLE DOUBT; YOU'RE GIVING UP YOUR RIGHT TO CONFRONT WHATEVER THE EVIDENCE IS THAT THE PROSECUTOR HAS; YOU'RE GIVING UP YOUR RIGHT TO CROSS EXAMINE ALL OF THE WITNESSES THAT HE WOULD CALL TO TESTIFY AGAINST YOU; YOU'RE GIVING UP YOUR RIGHT TO REQUIRE ANY WITNESS THAT YOU MAY HAVE, IF YOU HAVE ANY, TO COME TESTIFY IN YOUR BEHALF; YOU'RE GIVING UP YOUR RIGHT TO BE REPRESENTED BY COUNSEL THROUGH WHATEVER TRIAL PROCEEDINGS THERE WOULD BE; AND YOU'RE GIVING UP YOUR RIGHT TO NOT TESTIFY AT YOUR TRIAL IF YOU DIDN'T WANT TO.
 {¶ 47} "DO YOU UNDERSTAND THAT YOU'D BE GIVING UP ALL OF THESE RIGHTS IF YOU'RE PLEADING NO CONTEST?
 {¶ 48} "THE DEFENDANT: Yes, Your Honor.
 {¶ 49} "THE COURT: DO YOU HAVE ANY QUESTION ABOUT THAT AT ALL?
 {¶ 50} "THE DEFENDANT: No." (Tr. 2-4.)
 {¶ 51} In this case, the trial court went to great lengths to inform appellant of certain constitutional rights he was waiving by pleading no contest. However, it did not inform him that his no contest plea was not an admission of his guilt, but was an admission of the truth of the facts alleged in the complaint, and that the plea or admission could not be used against him in any subsequent civil or criminal *Page 11 
proceeding. In other words, it never informed him of the effect of his no contest plea as is required by Crim.R. 11(B), Crim.R. 11(E), andJones.
 {¶ 52} Next, pursuant to Jones, it must be determined if Cohen "suffered prejudice." Cohen's attorney advised the trial court that Cohen was entering a plea of no contest, stipulating to a finding of guilt, and waiving introduction of any facts or circumstances surrounding the incident. (Tr. 2.) The trial court itself also advised Cohen, "IF YOU'RE PLEADING NO CONTEST, YOU'RE SAYING THAT YOU'RE NOT CONTESTING THIS CHARGE; YOU'RE ALLOWING ME TO FIND THAT YOU DID VIOLATE THE TERMS OF THE PROTECTION ORDER WITHOUT GOING THROUGH A TRIAL AND BEING PROVEN GUILTY OF DOING THAT." (Tr. 3.) Additionally, like inJones, there is no evidence that at the time of his plea he claimed innocence. Therefore, under the totality of the circumstances, Cohen was aware of the effect of his no contest plea, and he was not prejudiced by the trial court's failure to inform him of Crim.R. 11(B)(2).
 {¶ 53} Accordingly, this aspect of Cohen's first assignment of error is without merit.
 Recommended Sentence {¶ 54} As indicated earlier, Cohen also contends that his no contest plea was not knowing, intelligent, and voluntary because the trial court failed to inform him that it was not bound by the State's recommended sentence. The State counters that when the plea form Cohen signed is read in conjunction with the plea hearing transcript, it is evident that he knew that the trial court was not bound by the sentencing recommendation.
 {¶ 55} In support of his argument, Cohen relies on State v.Clark, 4th Dist. No. 02CA12, 2002-Ohio-6684. In Clark, the defendant was charged with attempted murder and later reached a plea agreement with the State in which he agreed to plead guilty to an amended charge of felonious assault. The day of the plea hearing, the defendant signed a plea form indicating that the State would recommend a four and half year sentence. Neither the State or the defendant's counsel mention at the *Page 12 
plea hearing that the State had agreed to recommend the sentence in exchange for the defendant's plea to the amended charge. The trial court conducted the Crim.R. 11(C) dialogue and informed the defendant that he faced a possible maximum sentence of eight years. At a subsequent sentencing hearing, the trial court proceeded to sentence the defendant to eight years, contrary to the recommendation contained in the written plea agreement. The defendant appealed arguing that his guilty plea was not knowing, intelligent, and voluntary because the trial court failed to inform him that it was not bound by the State's recommended sentence.
 {¶ 56} "Without clarification from the court or counsel regarding the force of a recommended sentence," the Fourth District Court of Appeals felt the defendant "may have believed that his plea agreement guaranteed that he would not receive a sentence greater than four and one-half years." Id. at ¶ 14. Thus, the Court concluded that the defendant did not knowingly, intelligently, and voluntarily enter his plea.
 {¶ 57} Clark can be distinguished from the present case.Clark involved a felony charge for a "serious offense." This case involves a misdemeanor charge for a "petty offense."
 {¶ 58} Additionally, even Clark acknowledged "that statements of counsel on the record may demonstrate a defendant's subjective understanding that a recommended sentence is not binding upon the court." Id. at ¶ 13. While such statements were absent inClark, that is not the case here. The plea hearing here began as follows:
 {¶ 59} "THE COURT: STATE VERSUS HOWARD COHEN.
 {¶ 60} "MR. BRIAN P. KISH [Cohen's defense counsel]: Good morning, Your Honor.
 {¶ 61} "THE COURT: YOU'VE REACHED A RULE 11 AGREEMENT?
 {¶ 62} "MR. KISH: Yes, we have, Your Honor.
 {¶ 63} "THE COURT: WHERE IS MR. HARTUP?
 {¶ 64} "MR. BRETT HARTUP [assistant city prosecutor]: It's my *Page 13 
understanding that Mr. Cohen is going to withdraw his former plea of not guilty and enter a plea of no contest to violation of protection order.
 {¶ 65} "Based upon that no contest plea, a stipulation to a finding of guilt, the State moves to dismiss the carrying concealed weapons charge.
 {¶ 66} "If the court accepts this pleas [sic], the State would recommend probation.
 {¶ 67} "MR. KISH: That's my understanding, as well, with regard to dismissal. We'll enter a plea of no contest, stipulate to a finding of guilt, waive introduction of any facts and circumstances surrounding the incident and ask that community control be imposed." (Tr. 2.)
 {¶ 68} This reflects that the parties were, as Cohen's counsel put it, "asking" the Court for imposition of the community control sanctions as "recommended" by counsel for the State. This evidences that Cohen had a subjective understanding that a recommended sentence was not binding upon the court.
 {¶ 69} Moreover, in the context of Crim.R. 11(C) cases (pleas of guilty and no contest in felony cases), this court has held that "[o]ral ambiguities in the oral colloquy can be reconciled in some cases by a written acknowledgement of the plea and waiver of the trial rights."State v. Green, 7th Dist. No. 02 CA 217, 2004-Ohio-6371, at ¶ 15. Here, the plea form Cohen signed stated, "I further understand that the court may accept or reject all or part of the State of Ohio's sentencing recommendations." At the plea hearing, Cohen acknowledged that he had gone over the form with his attorney and signed it. (Tr. 3.)
 {¶ 70} Accordingly, this aspect of Cohen's first assignment of error is without merit.
 {¶ 71} Cohen's second assignment of error states:
 {¶ 72} "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONSIDERING THE FACTORS SET FORTH IN R.C. 2929.22 BEFORE SENTENCING COHEN TO SIXTY DAYS IN JAIL."
 {¶ 73} Under this assignment of error, Cohen's argument is two-fold. First, he *Page 14 
argues that the trial court did not consider mitigating evidence presented under R.C. 2929.22. Second, he argues that the trial court improperly considered evidence concerning the underlying retaliation charge Cohen was facing in Mahoning County Common Pleas Court, for which he had yet to be convicted.
 {¶ 74} Concerning mitigating factors, Cohen points to the State's recommendation that he not serve a jail term and that the victim, Deputy Green, did not object to the terms of the plea agreement. Cohen contends that the crime was unlikely to occur again. In support, he highlights his statements to the trial court that his carrying the knives was simply a mistake and that he had turned over all of his weapons to his bail bondsman. Cohen also attempts to minimize the nature and circumstances surrounding the offense itself. He states that he "inadvertently" placed the knives in his pocket and points out that he voluntarily turned them over to the deputy working at the metal detector at the entrance to the courthouse. Cohen contends he never approached Deputy Green with a knife or threatened him.
 {¶ 75} Next, Cohen argues that the trial court improperly relied on testimony from Deputy Green relating to the retaliation charge. Cohen characterizes the bulk of Deputy Green's testimony as hearsay and points out that he never directly threatened Deputy Green. Cohen contends the trial court ignored the mitigating factors and plea agreement and instead focused and relied upon the facts and circumstances surrounding the retaliation charge when it sentenced him to the sixty days in jail.
 {¶ 76} In response, the State maintains that the trial court did consider mitigating factors, as wells as aggravating factors. The State underscores that the weight to be given to any particular factor is within the discretion of the sentencing court and that it may, in fact, give no weight to any particular factor. Citing State v. Hoffner,102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48. Concerning aggravating factors, the State points out that Cohen implicitly acknowledged that he may have carried a knife everyday, from until after the protection order was obtained until the day he arrived at the courthouse. *Page 15 
 {¶ 77} The State counters Cohen's allegation that the trial court ignored the plea agreement and attendant sentence recommendation by reiterating the well-accepted principle that a sentencing court is not bound by a sentence recommendation. The State also maintains that the trial court did consider community control when it stated, "MR. COHEN, I CANNOT IN GOOD CONSCIENCE PLACE YOU ON COMMUNITY CONTROL STATUS UNTIL AFTER YOU GET OUT OF JAIL." (Tr. 11.)
 {¶ 78} The State also maintains that the trial court did not focus on the pending retaliation charge. The State argues that Deputy Green simply described how the retaliation charge and protection order came about.
 {¶ 79} The overriding purposes of misdemeanor sentencing are to punish the offender and to protect the public from future crime by the offender and others. R.C. 2929.21(A). In order to achieve these purposes, the sentencing court shall consider the impact of the offense on the victim, the need to change the offender's behavior, the need to rehabilitate the offender, and the desire to make restitution to the victim and/or the public. Id.
 {¶ 80} A misdemeanor sentence shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing set forth above, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders. R.C. 2929.21(B). The sentencing court has the discretion to determine the most appropriate method of achieving the aforestated purposes and principles of sentencing. R.C. 2929.22(A).
 {¶ 81} In determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors: (a) the nature and circumstances of the offense; (b) whether the circumstances surrounding the offender and the offense indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense; (c) whether the circumstances regarding the offender and *Page 16 
the offense indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences; (d) whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious; (e) whether the offender is likely to commit future crimes in general. R.C.2929.22(B)(1). The court may also consider any other relevant factors. R.C. 2929.22(B)(2). And, before imposing a jail term as a sentence for a misdemeanor, the court shall consider the appropriateness of imposing a community control sanction. R.C. 2929.22(C).
 {¶ 82} An appellate court reviews a trial court's sentence on a misdemeanor violation under an abuse of discretion standard. R.C.2929.22; State v. Frazier, 158 Ohio App.3d 407, 815 N.E.2d 1155,2004-Ohio-4506, ¶ 15. An abuse of discretion means more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 404 N.E.2d 144. When reviewing a sentence, an appellate court should be guided by the presumption that the trial court's findings were correct. In the Matter Of: Michael L. Slusser (2000),140 Ohio App.3d 480, 487, 748 N.E.2d 105.
 {¶ 83} As this Court observed in State v. Crable, 7th Dist. No. 04 BE 17, 2004-Ohio-6812:
 {¶ 84} "According to R.C. 2929.22, the trial court must consider the criteria listed in that statute before sentencing someone convicted of a misdemeanor. However, the trial court is not required to recite on the record its reasons for imposing the sentence. State v. Baker (1984), 25 Ohio Misc.2d 11, 13, citing State v. Bentley (May 6, 1981), 1st Dist. No. C-800378. Failure to consider the sentencing criteria is an abuse of discretion; but when the sentence is within the statutory limit, a reviewing court will presume that the trial judge followed the standards in R.C. 2929.22, absent a showing otherwise. Wagner,80 Ohio App.3d at 95-96. Failing to explain the statutory reasons behind a certain sentence is only fatal if there are *Page 17 
mitigating factors without any aggravating factors given at the sentencing hearing. State v. Flors (1987), 38 Ohio App.3d 133, 140. * * *" Id. at ¶ 24. See, also, State v. Poindexter, 7th Dist. No. 05-MA-45,2006-Ohio-3525, at ¶ 10.
 {¶ 85} Here, the trial court did not specifically mention any of the R.C. 2929.22 factors. A silent record raises the presumption that the trial court considered all of the factors listed in R.C. 2929.22.State v. Cole (1982), 8 Ohio App.3d 416, 457 N.E.2d 873. See, also,Conneaut v. Peaspanen, 11th Dist. No. 2004-A-0053, 2005-Ohio-4658, at ¶ 29. Nevertheless, the nature and circumstances of the offense support the trial court's imposition of a sixty-day jail sentence. R.C.2929.22(B)(1)(a).
 {¶ 86} Likewise, the trial court did not improperly consider the pending retaliation charge. First, the Rules of Evidence do not apply in sentencing hearings, and the judge may consider any reliable evidence in the record. Evid.R. 101(C); State v. Cook (1998), 83 Ohio St.3d 404,425, 700 N.E.2d 570. Second, "it is well-established that a sentencing court may weigh such factors as arrests for other crimes. As noted by the Second Circuit United States Court of Appeals, the function of the sentencing court is to acquire a thorough grasp of the character and history of the defendant before it. The court's consideration ought to encompass negative as well as favorable data. Few things can be so relevant as other criminal activity of the defendant: To argue that the presumption of innocence is affronted by considering unproved criminal activity is as implausible as taking the double jeopardy clause to bar reference to past convictions.' United States v. Doyle (C.A.21965),348 F.2d 715, 721, certiorari denied 382 U.S. 843, 86 S.Ct. 89,15 L.Ed.2d 84 (1965); United States v. Metz (C.A.3, 1972), 470 F.2d 1140, certiorari denied 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 311 (1973)."State v. Burton (1977), 52 Ohio St.2d 21, 23, 368 N.E.2d 297; See, also,City of Maple Heights v. Dickard (1986), 31 Ohio App.3d 68, 71,508 N.E.2d 994; State v. Crites, 7th Dist. No. 04 MA 146, 2005-Ohio-2704, at ¶ 20.
 {¶ 87} Accordingly, Cohen's second assignment of error is without merit.
 {¶ 88} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
DeGenaro, P.J., concurs.
[1] In December 2004, the Ohio Constitution was amended to include The Defense of Marriage Amendment." The amendment stated: "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." Section 11, Art.XV, Ohio Constitution. At the time, this amendment had been used to challenge the constitutionality of the domestic violence statute when applied to people who are not related. The Ohio Supreme Court recently upheld the constitutionality of R.C. 2919.25 in State v. Carswell,114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547.
[2] In fairness to the attorneys representing the parties herein, it should be noted that Jones was not decided until recently on November 21, 2007, well after this case was fully briefed. *Page 1