[Cite as *State v. Hefflinger*, 2017-Ohio-7100.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                    Court of Appeals No. E-16-054

　　　　Appellee                              Trial Court No. TRC 1505688

v.

Suann R. Hefflinger                          **DECISION AND JUDGMENT**

　　　　Appellant                             Decided:  August 4, 2017

* * * * *

Laura E. Alkire, City of Huron Law Director, for appellee.

Timothy H. Dempsey, for appellant.

* * * * *

**JENSEN, P.J.**

## I.  Introduction

{¶ 1} Appellant, Suann Hefflinger, appeals the judgment of the Erie County Municipal Court, sentencing her to 120 days in jail following a bench trial in which she was found guilty of one count of operating a vehicle while under the influence of alcohol or drug of abuse, one count of refusal to submit to chemical test, one count of failing to

stop for a school bus, and one count of failing to stop in an assured clear distance. Finding no error, we affirm.

## A. Facts and Procedural Background

{¶ 2} The facts giving rise to the above-mentioned convictions occurred on the morning of September 16, 2016. At approximately 7:06 a.m., appellant was operating her automobile along Wahl Road in Margaretta Township, Erie County, when she collided into the rear-end of a school bus, which was stopped at the time. As a result of the collision, a complaint was filed with the trial court, charging appellant with one count of operating a vehicle while under the influence of alcohol or drug of abuse in violation of R.C. 4511.19(A)(1)(a) and (A)(2)(b), a misdemeanor of the first degree, one count of refusal to submit to a chemical test in violation of R.C. 4511.19(A)(2), a misdemeanor of the first degree, one count of failing to stop for a school bus in violation of R.C. 4511.75(A), a misdemeanor of the fourth degree, and one count of failing to stop in an assured clear distance in violation of R.C. 4511.21(A), a minor misdemeanor.

{¶ 3} Following pretrial, the matter proceeded to a bench trial. On the day of the bench trial, appellant entered a plea of guilty as to the assured clear distance charge. The trial court accepted the plea and found appellant guilty as to the charge. Thereafter, the bench trial commenced.

{¶ 4} The state called three witnesses during its case-in-chief. Its first witness was the officer who responded to the accident, Jared Oliver. After arriving at the scene of the accident, Oliver noticed that appellant's vehicle had crashed into the rear-end of the

2.

school bus, and had lodged itself under the bus. Oliver questioned appellant, who informed him that she ran into the school bus after falling asleep at the wheel. Oliver went on to state that appellant told him that she was tired from her medication. Oliver testified that appellant appeared to be very lethargic, had trouble comprehending what had happened, and was disoriented as to where she was and where she was coming from.

{¶ 5} Upon further questioning, Oliver indicated that he was "very familiar" with appellant, having interacted with her in the past on several occasions. Based on his familiarity with appellant and his observations of her condition at the scene of the accident, Oliver suspected that appellant was under the influence of a narcotic. Consequently, Oliver directed another officer, Trevor Harlow, to meet with appellant at Firelands Regional Medical Center and perform a chemical test to test for the presence of narcotics in her system.

{¶ 6} Following appellant's transfer to the hospital, Oliver conducted an administrative inventory of appellant's vehicle. During the inventory, Oliver found three prescription bottles, two of which were empty. The third bottle contained 15 pills of Clonazepam, which Oliver described as a scheduled substance. According to the label on the bottle, appellant was prescribed 90 pills two weeks prior to the accident.

{¶ 7} At the conclusion of Oliver's testimony, the state called Harlow as its second witness. Harlow testified that he reported to Firelands Regional Medical Center at Oliver's request. While at the hospital, Harlow attempted to conduct a urinalysis test to

3.

screen appellant for narcotics. After being informed of the potential consequences of the urinalysis test, appellant refused to submit to the test.

{¶ 8} Once appellant was released from the hospital, Harlow informed her that Oliver was on his way with her prescription medications. Harlow then engaged appellant in a conversation while the two were waiting for Oliver to arrive. The conversation was recorded using Harlow's body camera. During the conversation with Harlow, which was admitted at trial, appellant stated that she knew she was not supposed to take her medications and drive, but a "girl that she was mentoring" insisted that appellant drive her home. Appellant later informed her neighbor that she took two pills, fell asleep in her car, and subsequently attempted to drive home despite feeling drowsy.

{¶ 9} As its third and final witness, the state called Kimberly Trimarche, the driver of the school bus that was involved in the collision. Trimarche testified that she witnessed appellant run into the rear end of the bus as she was stopped and waiting for a student to board the bus. In describing the collision, Trimarche stated: "But, no, she just kept coming and it was not a fast movement. It wasn't a slow movement. It was just a continuous, just kept coming straight on. No swerving, no nothing, just straight on. Hit right in the rear end, right there."

{¶ 10} At the conclusion of the state's case-in-chief, the parties stipulated to the admission of appellant's medical records from Firelands Regional Medical Center and

4.

the Margaretta Township Fire Department. Thereafter, the state rested.[1] Appellant called no witnesses.

{¶ 11} Ultimately, the court found appellant guilty on all four charges contained in the complaint. In its judgment entry, the court stated that it found that appellant "consumed prescription drugs which appreciably impaired her ability to stay awake and safely operate a motor vehicle." The court went on to find that appellant's impairment caused her to fall asleep and drive into the back of the stopped school bus. Following its determination of guilt on the four charges contained in the state's complaint, the trial court ordered the preparation of a presentence investigation report and set the matter for a sentencing hearing. At the sentencing hearing, the trial court sentenced appellant to 120 days in jail for operating a vehicle while under the influence of alcohol or drug of abuse. The court then "merged and dismissed" the charge for refusal to submit to a chemical test, and imposed a $100 fine and a $20 fine as to the charges for failing to stop for a school bus and failing to stop in an assured clear distance, respectively.

## B. Assignments of Error

{¶ 12} Appellant has filed a timely notice of appeal, assigning the following errors for our review:

---

[1] The state subpoenaed two additional witnesses, but the individuals did not appear at trial and could not be located by the state.

I. The conviction is against the manifest weight of the evidence.

II. The conviction is not supported by sufficient evidence.

III. Trial counsel was ineffective.

## II. Analysis

{¶ 13} In her first assignment of error, appellant argues that her conviction for operating a vehicle while under the influence of alcohol or drug of abuse was against the manifest weight of the evidence. In her second assignment of error, she contends that the conviction was not supported by sufficient evidence.

{¶ 14} Sufficiency and manifest weight are quantitatively and qualitatively different legal concepts. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency of the evidence is a determination of adequacy, and a court must consider whether the evidence was sufficient to support the conviction as a matter of law. *Id.* The proper analysis is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 15} When reviewing a manifest weight of the evidence issue, we sit as a "thirteenth juror." *Thompkins* at 387. That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact]

6.

clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

{¶ 16} Concerning the offense of operating a vehicle while under the influence of a drug of abuse, R.C. 4511.19 provides, in relevant part:

(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

{¶ 17} Thus, in order to convict appellant of operating a vehicle while under the influence of a drug of abuse, the state was required to prove, beyond a reasonable doubt, that appellant was (1) operating a vehicle, and (2) doing so while under the influence of a drug of abuse.

{¶ 18} There is no dispute in this case as to whether appellant was operating a vehicle. At trial, Oliver and Trimarche identified appellant as the driver of the vehicle that crashed into the rear end of the school bus Trimarche was driving.

{¶ 19} Further, we find that clonazepam, the prescription drug that appellant admittedly ingested prior to operating her vehicle, meets the definition of a "drug of abuse," which is defined under R.C. 4506.01(M) as "any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication

7.

that, when taken in quantities exceeding the recommended dosage, can result in impairment of judgment or reflexes." Under R.C. 3719.01(C), a "controlled substance" is defined as "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V." Clonazepam is listed as a schedule IV drug in R.C. 3719.41. Therefore, clonazepam is a controlled substance and, by extension, a "drug of abuse" under R.C. 4511.19. *See State v. Anderson*, 11th Dist. Lake No. 2005-L-179, 2006-Ohio-5371, ¶ 20 ("Initially, we note that clonazepam is a Schedule IV controlled substance identified in R.C. 3719.41(B)(9) and, therefore, a controlled substance.").

{¶ 20} Having found that appellant was operating her vehicle after ingesting a drug of abuse, the sole remaining issue is whether the state introduced sufficient evidence as to whether appellant was actually under the influence of clonazepam at the time of the collision. Appellant asserts that the state was required to establish that she was under the influence of clonazepam by way of testimony from a medical expert, especially in light of the fact that field sobriety tests were not performed in this case.

{¶ 21} At the outset, we note that the element of being "under the influence" may be proven by eyewitness testimony, and therefore an officer is not required to conduct field sobriety or other tests in order to establish the element. *State v. Scandreth*, 11th Dist. Trumbull No. 2009-T-0039, 2009-Ohio-5768, ¶ 71. Here, the requisite eyewitness testimony was provided by Oliver, who testified that appellant appeared to be very lethargic, had trouble comprehending what had happened, and was disoriented as to

8.

where she was and where she was coming from, which led him to suspect that she was intoxicated. Prior to providing this testimony, Oliver recited his extensive training:

Well, I've been through the basic police academy. I've been through several, several interview and interrogations, traffic crash, DUI trainings. I'm ADAP certified. I've gone to several other schools related to investigations. I'm a graduate of the 242nd session of the FBI National Academy. I've been to leadership classes. I've testified. I've conducted numerous, numerous investigations.

{¶ 22} As to appellant's contention that the state was required to establish her impairment by way of expert medical testimony, the Supreme Court of Ohio has recently stated that the testimony of an experienced police officer that a defendant appears to be under the influence of a drug of abuse at the time of arrest, paired with additional evidence that the defendant had ingested a drug of abuse, constitutes sufficient evidence to support a conviction for operating a vehicle while under the influence of a drug of abuse. *State v. Richardson*, Slip Opinion No. 2016-Ohio-8448, ¶ 1. In that case, Richardson was cited for operating a vehicle while under the influence of a drug of abuse after he rear-ended a car that was stopped ahead of him at a red light. *Id.* at ¶ 2. The driver of the stopped vehicle found Richardson's speech to be slurred and incomprehensible. Consequently, the driver alerted police of Richardson's condition. *Id.*

{¶ 23} After an officer arrived on scene, he noticed that Richardson's speech was slurred. *Id.* at ¶ 3. Further, the officer witnessed Richardson singe his hair while

9.

attempting to light a cigarette. *Id.* The officer eventually administered field sobriety tests, which Richardson failed. *Id.* at ¶ 4. Thereafter, the officer asked Richardson to submit to a blood test, but he refused. *Id.* As a result, Richardson was arrested.

{¶ 24} At his subsequent bench trial, Richardson testified that he had a prescription for hydrocodone acetaminophen but had not taken any for two days prior to the accident. Rather than being under the influence of the prescription medication, Richardson asserted that he was actually experiencing symptoms of withdrawal from the medication on the date of the accident. *Id.* at ¶ 6. He supported his assertion with the testimony of an expert in emergency medicine and chemical dependency, who testified that Richardson's symptoms were consistent with those he would expect from a patient experiencing withdrawal and inconsistent with those he would expect if Richardson was actually under the influence of the drug. *Id.* For its part, the state presented the testimony of the driver that was rear-ended and the arresting officer.

{¶ 25} At the close of trial, the trial court found Richardson guilty of operating a vehicle under the influence of a drug of abuse and endangering children. *Id.* at ¶ 7. Richardson appealed to the Second District, where his conviction was overturned based on the finding that the state failed to introduce sufficient evidence to support the conviction for operating a vehicle under the influence of a drug of abuse. *Id.* at ¶ 8. In particular, the Second District found that the state failed to establish a connection between Richardson's use of the prescription drugs and his resulting impairment. *Id.*

10.

{¶ 26} On review before the Supreme Court of Ohio, the court reversed the Second District's decision and upheld Richardson's conviction. *Id*. at ¶ 21. In so doing, the court found that the arresting officer's testimony that Richardson acknowledged being on pain medication and having taken the equivalent of three hydrocodone acetaminophen pills constituted sufficient evidence to prove that Richardson ingested hydrocodone. *Id*. at ¶ 15-17. The court also concluded that the state presented sufficient evidence of Richardson's impairment when it elicited testimony from the arresting officer that Richardson slid out of his vehicle rather than stepping out of the vehicle, singed his hair while trying to light a cigarette, failed several field sobriety tests, and spoke with slurred speech. *Id*. at ¶ 18.

{¶ 27} As to the connection between Richardson's impairment and his ingestion of hydrocodone, the court stated:

> When the effects of a drug are sufficiently well known—as they are with hydrocodone—expert testimony linking ingestion of the drug with indicia of impairment is unnecessary. And there was lay testimony that connected Richardson's impairment to the hydrocodone, i.e., the testimony of an experienced and well-trained police officer. On these facts, we hold that the evidence was sufficient to support Richardson's OVI conviction.

*Id*. at ¶ 19.

{¶ 28} Consistent with the Supreme Court of Ohio's holding in *Richardson*, we find that the state introduced sufficient evidence to support appellant's conviction in this

case. As noted above, the state presented the testimony of Oliver, who was a well-trained officer that was familiar with appellant and testified as to her impairment. Oliver discovered 15 pills of Clonazepam during his search of appellant's vehicle, and appellant acknowledged taking the drug prior to the accident during her conversation with Harlow and her neighbor. The fact that she was under the influence of Clonazepam at the time of the accident may also be inferred by the fact that she was prescribed 90 pills just two weeks prior to the accident and only 15 remained. As to whether Clonazepam had the capacity to impair appellant's driving, appellant acknowledged during her conversation with Harlow that she knew she was not supposed to take her medications and drive.

{¶ 29} In light of the foregoing evidence, we find that the state was not required to introduce expert testimony linking appellant's ingestion of Clonazepam to her subsequent impairment in order to support appellant's conviction for operating a vehicle under the influence of a drug of abuse. Further, we find that appellant's conviction was not against the manifest weight of the evidence. Accordingly, appellant's first and second assignments of error are not well-taken.

{¶ 30} In her third assignment of error, appellant argues that her trial counsel was ineffective. In order to demonstrate ineffective assistance of counsel, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must show that counsel's performance fell below an objective standard of reasonableness, and a reasonable

12.

probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694.

{¶ 31} Here, appellant argues that her trial counsel committed two errors that resulted in the ineffective assistance of counsel. First, appellant contends that her trial counsel erred in stipulating to the admission of her medical records at trial. "Generally, decisions to stipulate to facts or evidence are tactical decisions that fall within the wide range of reasonable professional assistance." *State v. Mackey*, 12th Dist. Warren No. CA99-06-065, 2000 Ohio App. LEXIS 480, *14 (Feb. 14, 2000), citing *State v. Otte*, 74 Ohio St.3d 555, 565, 660 N.E.2d 711 (1996); *State v. Green*, 66 Ohio St.3d 141, 148, 609 N.E.2d 1253 (1993). "Moreover, counsel is not deficient by stipulating to facts for which there is ample evidence, or to evidence that is 'unassailable.'" *Id.*, citing *Otte* at 565.

{¶ 32} Having reviewed appellant's medical records, we find that trial counsel's stipulation was not unreasonable. Indeed, the medical records contain no information that would have been prejudicial to appellant's defense in this case. The records merely recite appellant's medical condition at the time of the arrival of emergency personnel and the treatment that was provided to her from that point forward. The records do not indicate the cause of the accident, nor do they reference any impairment due to the ingestion of Clonazepam. Rather than damaging her defense, the absence of any reference to appellant's impairment could support her defense that fatigue caused her to collide into the rear-end of the school bus rather than any impairment attributable to a drug of abuse. In that regard, the medical records from Firelands Regional Medical

13.

Center include a statement that appellant "appears sleepy, but states that she did not get much sleep."

{¶ 33} In sum, we find that trial counsel's decision to stipulate to the admission of appellant's medical records was a tactical one that falls within the range of reasonable assistance. We find no basis for second guessing trial counsel's decision. Moreover, we fail to see how the admission of the medical records in this case affected the outcome of the case in light of the absence of any information therein that could have led the factfinder to conclude that appellant was impaired at the time of the accident.

{¶ 34} Second, appellant argues that trial counsel was ineffective in allowing her to enter a plea of guilty to the charge of assured clear distance prior to trial. Specifically, appellant contends that trial counsel should have insisted on a plea of no contest rather than a guilty plea in order to preserve the issue of civil liability in a subsequent civil action. Appellant also asserts that trial counsel's ineffectiveness concerning her guilty plea is evident from the fact that the trial court did not inform her of the consequences of her plea prior to accepting the plea under Crim.R. 11.

{¶ 35} The offense of failing to stop in an assured clear distance is set forth in R.C. 4511.21(A) as follows:

> (A) No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless

14.

trolley, or streetcar in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.

{¶ 36} In this case, the state introduced abundant and uncontested evidence that appellant was the operator of the motor vehicle that crashed into the rear-end of the school bus driven by Trimarche. During her discussion with Oliver following the accident, appellant acknowledged having fallen asleep at the wheel prior to colliding with the school bus. Further, Trimarche testified that appellant drove into the school bus without attempting to stop. Thus, there is no support for appellant's assertion that a no contest plea would improve her ability to prevail in a future civil action in light of the aforementioned evidence. Consequently, appellant cannot demonstrate that the outcome of the proceeding would have been different had she not entered a guilty plea to the assured clear distance charge.

{¶ 37} Additionally, we have previously held that a defendant, upon the entry of a guilty plea, waives any appealable errors, including a claim of ineffective assistance, "unless he or she demonstrates that the alleged errors precluded him or her from entering a knowing, voluntary plea." *See State v. Ellis*, 6th Dist. Lucas No. L-15-1296, 2016-Ohio-8086, ¶ 35, citing *State v. Kocian*, 6th Dist. Ottawa No. OT-07-018, 2008-Ohio-74. Appellant does not assert that the trial court's noncompliance with Crim.R. 11 caused her to enter a plea that she would not otherwise have entered. Therefore, we find that trial

15.

counsel was not ineffective for allowing her to plead guilty to the assured clear distance charge.

{¶ 38} Accordingly, appellant's third assignment of error is not well-taken.

### III. Conclusion

{¶ 39} For the foregoing reasons, the judgment of the Erie County Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.       _____
                                   JUDGE

Thomas J. Osowik, J.

_____
James D. Jensen, P.J.                JUDGE
CONCUR.

_____
                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.