[Cite as *State v. Hinckley*, 2025-Ohio-4569.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio

    Appellee

v.

Gregory R. Hinckley

    Appellant

Court of Appeals No. {39}H-24-033
{39}H-24-034
{39}H-24-035

Trial Court No. TRC 241036A
TRC 2400743
TRC 2401344

**DECISION AND JUDGMENT**

Decided: September 30, 2025

* * * * *

Sarah A. Nation, Esq., attorney for appellant.

Scott M. Christophel, Esq., Assistant Law Director, for appellee.

* * * * *

**DUHART, J.**

{¶ 1} In this consolidated appeal, appellant, Gregory R. Hinckley, appeals from

judgments entered by the Norwalk Municipal Court following a bench trial in case No.

TRC 2400743; a plea of no contest in case No. TRD 2401036A; and a plea of no contest

in case No. TRC 2401344. For the reasons that follow, the trial court's judgments are affirmed.

**Statement of the Case and of the Facts**

{¶ 2} Between March and April of 2024, Hinckley was arrested and charged through the Norwalk Municipal Court, in three separate cases, with two counts of OVI in violation of R.C. 4511.19(A)(1) and one count of driving under suspension in violation of R.C. 4510.11. Hinckley had previously been convicted of at least two OVI offenses within the preceding 10 years.

**TRC 2400743**

{¶ 3} On August 7, 2024, a bench trial was held in case No. TRC 2400743. The evidence in that case showed that on March 7, 2024, Norwalk Police Officer Josh Collins responded to a call from a motorist about an erratic driver whose vehicle had come to a stop a couple of inches away from a telephone pole. Collins testified that he approached Hinckley's vehicle and found Hinkley "slanted over, with his eyes closed." Collins knocked on the driver's side window several times before Hinckley woke up, appearing dazed and confused. Hinckley mentioned that he had a colostomy bag. Collins asked him to step out of the vehicle just to make sure that he was okay. According to Collins, Hinckley had difficulty getting out of his car and walking over to the sidewalk, as he was "very uneasy on his feet." Hinckley denied having consumed any alcohol or drugs.

{¶ 4} Collins conducted field sobriety testing in the form of a horizontal gaze nystagmus ("HGN") test, during which Collins observed six of six clues. Collins

2.

attempted to administer a walk and turn test, in addition, but he stopped the test out of concern for Hinckley's safety, due to Hinckley's lack of balance. The results of the HGN test indicated to Collins that Hinckley was impaired by "some sort of drug." Collins testified that the narcotic fentanyl could cause horizontal gaze nystagmus.

{¶ 5} Collins placed Hinckley under arrest and transported him to the Norwalk Police Department. Upon his arrival at the station, Hinckley appeared drowsy and was slow to get out of the police vehicle. Collins asked Hinckley if he would like EMS to come and check him out, and Hinckley answered affirmatively. After EMS arrived and conducted their exam, they recommended that Hinckley receive treatment, but Hinckley indicated that he did not want to go to the hospital. According to Collins, Hinckley's general demeanor was that he was "very in and out of it," "[j]ust knocking his head back and forth."

{¶ 6} Collins testified that as part of his training and experience as a police officer he had dealt with people under the influence of fentanyl. He stated that people under the influence of fentanyl are "[j]ust out of it, most of the time," they're "just uneasy on their feet," "[j]ust unpredictable types of behavior." Based on his training and experience, Collins concluded that Hinckley's behavior at the station was consistent with someone under the influence of fentanyl.

{¶ 7} As revealed in Collins's body worn camera footage, Collins notified Hinckley of his *Miranda* rights and, thereafter, Hinckley advised that he was wearing a

3.

fentanyl patch. Hinckley also provided a urine sample. The results of the urine test were positive for fentanyl.

{¶ 8} At trial, defense counsel objected to the admission of the urine test results on the grounds that there was no expert testimony to interpret the meaning of those results for the purpose of establishing that Hinkley was impaired. The State responded that the urine test results were being offered not to show proof of impairment but only to show that Hinckley had consumed a drug of abuse. After hearing from counsel for both sides, the trial court allowed the admission of the urine test results.

{¶ 9} Ultimately, the trial court found Hinckley guilty of OVI in violation of R.C. 4511.19(A)(1), a misdemeanor of the first degree. On August 30, 2024, the trial court sentenced Hinckley to serve 365 days in jail, with 30 days suspended.

**TRD 2401036A**

{¶ 10} On September 11, 2024, Hinckley entered a plea of no contest to a charge of driving under suspension in violation of R.C. 4510.11, a misdemeanor of the first degree, in case No. TRD 2401036A. The penalty in that case included 180 days in jail, with 170 days suspended and 10 days ordered to be served consecutively to case No. TRC 2400743.

**TRC 2401344**

{¶ 11} On September 20, 2024, Hinckley entered a plea of no contest to a charge of OVI in violation of 4511.19(A)(1), a misdemeanor of the first degree, in case No. TRC 2401344. Hinckley was sentenced to serve 365 days in jail with 170 days suspended

4.

and 195 days ordered to be served consecutively to the sentence ordered in case No. 2401036A.

## Appeal

{¶ 12} Hinckley directly appealed from the trial court's September 20, 2024 final judgment of conviction and sentencing entered in case No. TRC 2401344. He then filed motions for leave to file a delayed appeal from the municipal court's judgments in case Nos. TRD 2401036A and TRC 2400743. This court granted Hinckley's motions, and all three appeals were consolidated under appellate case No. H-24-033.

## Assignments of Error

{¶ 13} On appeal, Hinckley asserts the following assignment of error:

I.    The trial court erred in imposing appellant's sentence and appellant's sentence is contrary to law.

II.   Defense counsel's performance of his duties was deficient in that he made errors so serious that he failed to function as the counsel guaranteed by the Sixty [sic] Amendment and appellant was prejudiced by such errors.

## Law and Analysis

**First Assignment of Error**

{¶ 14} App.R. 16(A)(4) provides that an appellant's brief should include a statement of the issues presented for review, with references to the assignments of error to which each issue relates. Hinckley identifies the issue in his first assignment of error as "[w]hether [his] sentence of 180 days jail and being ordered to be consecutive to another

5.

misdemeanor case is contrary to law."[1] But then, after mistakenly identifying case No. TRD 240136A as case No. "TRC22401344AB" (which case number does not match that of any case involved in the current appeal), Hinckley goes on to argue only that the trial court erred in sentencing him "to a term of 180 days, with 170 days suspended and consecutive to case number TRC2400743" because there was no indication that the court had considered "the nature and circumstances of the offense, whether there was a history of persistent criminal activity or character that reveal[ed] a substantial risk of the offender committing another offense, and numerous other factors related to the offender and the offense, as required."

{¶ 15} "An appellate court reviews misdemeanor sentences for an abuse of discretion." *State v. Dawes*, 2025-Ohio-2576, ¶ 11, (6th Dist.), citing *State v. Haas*, 2025-

---

[1] We note that at Hinckley's change of plea and sentencing hearing in case No. TRC 2401344 (which is the case that is currently on appeal but never discussed in the parties' briefs), defense counsel objected to the trial court's imposing a "gross amount" of jail time -- i.e., jail time that would include not just time ordered to be served but also any suspended time -- in excess of 18 months. But App.R. 16 requires that the appellant's brief shall include a "statement of the assignments of error presented for review," "a statement of the issues presented for review, with references to the assignments of error to which each issue relates," and "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented[.]" *Id.* at (A)(3), (4), and (7). At the same time, the court of appeals shall "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16" and the "court may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(1)(b) and (2). Pursuant to App.R. 12(A) and 16(A), we decline to sua sponte consider the validity of the imposition of aggregate "gross" time in excess of 18 months that was ordered to be served in all three cases.

6.

Ohio-683, ¶ 67 (6th Dist.)." In imposing a sentence for a misdemeanor offense, a trial court must consider the purposes and principles of misdemeanor sentencing as set forth in R.C. 2929.21, as well as the sentencing factors set forth in R.C. 2929.22." *City of Toledo v. White*, 2013-Ohio-5911, ¶ 15 (6th Dist.). However, "in sentencing a defendant for a misdemeanor, 'there is no obligation for the court to set forth its reasons for imposing sentence.'" *City of Toledo v. Kothe*, 2008-Ohio-2880, ¶ 19 (6th Dist.), quoting *State v. Hunter*, 2006–Ohio–6440, ¶ 1 (8th Dist.); *City of Youngstown v. Cohen*, 2008-Ohio-1191, ¶ 84 (7th Dist.). Thus, "[o]n a silent record, reviewing courts often presume that trial courts considered the proper statutory criteria for a misdemeanor sentence." *See Haas* at ¶ 68. Absent evidence to the contrary, a misdemeanor sentence that falls within the permissible statutory limits is presumed to be lawful. *State v. Dahms*, 2019-Ohio-3124, ¶ 13 (6th Dist.), citing *State v. Townsend*, 2002-Ohio-4077, ¶ 6 (6th Dist.).

{¶ 16} Here, there is no question that Hinckley's misdemeanor sentence falls within permissible statutory limits. Driving under suspension in violation of R.C. 4510.11 is a first-degree misdemeanor, and the jail term a trial court can impose for a first-degree misdemeanor is capped at 180 days. *See* R.C. 4510.11(D)(1); R.C. 2929.24(A)(1). Because Hinckley fails to allege -- and this court's review of the record fails to reveal -- any evidence sufficient to destroy the presumption that the trial court considered the proper statutory criteria in imposing Hinckley's sentence in case No. TRD 240136A, Hinckley's first assignment of error is found not well-taken.

7.

**Second Assignment of Error**

{¶ 17} Hinckley's second assignment of error alleges ineffective assistance of trial counsel. To establish ineffective assistance of counsel, Hinckley must show "'(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different.'" *State v. Warren*, 2024-Ohio-1072, ¶ 38 (6th Dist.), quoting *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151 (2002). "Because 'effective assistance' may involve different approaches or strategies, our scrutiny of trial counsel's performance 'must be highly deferential' with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Whitman*, 2021-Ohio-4510, ¶ 51 (6th Dist.), quoting *State v. Bradley*, 42 Ohio St.3d 136 (1989). "A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner." *Warren* at ¶ 38, quoting *State v. McDonald*, 2015-Ohio-1869, ¶ 18 (6th Dist.), citing *State v. Hamblin*, 37 Ohio St.3d 153, 155-156 (1988).

{¶ 18} Hinckley first argues that his trial counsel was deficient for failing to file a motion to suppress his admission to using a fentanyl patch. He accurately -- if inartfully -- states that "[trial counsel] objected to testimony regarding the statements of Appellant due to him not being read Miranda warnings." But because the uncontroverted evidence

8.

clearly reveals that Collins did, in fact, provide Hinckley with *Miranda* warnings prior to Hinckley's making any statements regarding the fentanyl patch, any objection to those statements -- whether in the form of a motion to suppress, a motion in limine, or simply an objection raised at trial -- would have been completely unavailing. Hinckley's trial counsel, in failing to file an unavailing motion to suppress Hinckley's admission to using a fentanyl patch, did not act deficiently. Neither did this failure to act result in any prejudice.

{¶ 19} Next, Hinckley argues that his trial counsel was deficient for failing to file a motion to suppress his urine test results. In making this argument, Hinckley acknowledges that his trial counsel "objected to admission of urine test results as there was no expert testimony." As indicated above, defense counsel objected to the admission of the urine test results on the grounds that there was no expert testimony to interpret the meaning of those results for the purpose of establishing that Hinkley was impaired. But the State argued that the urine test results were being offered not to show proof of impairment but only to show that Hinckley had consumed drug of abuse. On appeal Hinckley gives no alternative grounds for suppressing these results.

{¶ 20} The State, citing Ohio Supreme Court case *State v. Richardson*, argues that the admission of the urinalysis test result in this instance was consistent with the law. In reviewing this argument, we note that R.C. 4511.19(A)(1)(a) prohibits the operation of a vehicle when a person is under the influence of alcohol, a drug of abuse, or a combination of both, and that fentanyl is, without question, a drug of abuse. *See* R.C.

9.

4511.19(A)(1)(a); *State v. Childs*, 2024-Ohio-4699 (10th Dist.), ¶ 51 (fentanyl recognized to be a drug of abuse). "To support a conviction of operating a vehicle while under the influence of a drug of abuse, the state must prove, beyond a reasonable doubt, that the defendant was '(1) operating a vehicle, and (2) doing so while under the influence of a drug of abuse.'" *State v. Reynolds*, 2022-Ohio-3506, ¶ 24 (6th Dist.), quoting *State v. Hefflinger*, 2017-Ohio-7100, ¶ 17 (6th Dist.). This court has recognized that under *Richardson*, "'the testimony of an experienced police officer that a defendant appears to be under the influence of a drug of abuse at the time of arrest, *paired with* additional evidence that the defendant had ingested a drug of abuse, constitutes sufficient evidence to support a conviction for operating a vehicle while under the influence of a drug of abuse.'" (Emphasis added.) *Reynolds* at ¶ 24, citing *Hefflinger* at ¶ 22. As clarified by the Supreme Court of Ohio in *Richardson*, expert testimony is not required to link the ingestion of a drug of abuse with the defendant's impairment. *Richardson* at ¶ 20.

{¶ 21} Applying the foregoing law to the facts of this case, we find no error in the trial court's admission of Hinckley's urinalysis results for the purpose of showing that Hinckley had ingested a drug of abuse. It therefore follows that trial counsel did not act deficiently in failing to file a motion to suppress those results. For the same reason, Hinckley has failed to establish the element of prejudice. Hinckley's second assignment of error is found not well-taken.

10.

**Conclusion**

{¶ 22} The judgment of the Norwalk Municipal Court is affirmed. Appellant is ordered to pay the costs of appeal pursuant to App.R. 24.

JUDGMENT AFFIRMED.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.
_____
JUDGE

Gena A. Zmuda, J.
_____
JUDGE

Myron C. Duhart, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.