[Cite as *State v. Petitto*, 2024-Ohio-186.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                    Court of Appeals No.  OT-23-005

    Appellee                                 Trial Court No.  21 CR 061

v.

Jade L. Petitto                                  **DECISION AND JUDGMENT**

    Appellant                                Decided:  January 19, 2024

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Thomas A. Matuszak, Assistant Prosecuting Attorney, for appellee.

Brian A. Smith, for appellant.

* * * * *

**SULEK, J.**

{¶ 1} Appellant, Jade Petitto, appeals the February 24, 2023 judgment of the

Ottawa County Court of Common Pleas convicting her of two counts of felonious assault,

three counts of failure to comply with the order of a peace officer, and a seatbelt

violation.  Because any errors in the indictment are not prejudicial and Petitto's

convictions are supported by sufficient evidence and not against the manifest weight of

the evidence, they are affirmed. The trial court's erroneous imposition of postrelease control requires a limited remand.

## I. Facts and Procedural History

{¶ 2} On April 1, 2021, the Ottawa County Grand Jury indicted Petitto on charges stemming from a high-speed police chase in Ottawa County, Ohio. Relevant to this appeal, the state secured an indictment against Petitto charging her with two counts of felonious assault, R.C. 2903.11(A)(2), as follows:

**Count One Felonious Assault -F1**, § 2903.11(A)(2), 2903.11(B)

*The jurors of the Grand Jury of the State of Ohio, within and for the body of Ottawa County, on their oaths, IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO, do find and present*:

Jade L. Petitto, on or about March 13, 2021, at the county of Ottawa aforesaid, did knowingly cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, to wit: a motor vehicle/automobile in violation of Ohio Revised Code § 2903.11(A)(2), 2903.11(B), **Felonious Assault**, F1.

FURTHERMORE, the victim of the offense was a peace officer.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio*.

**Count Two Felonious Assault-F2** §2903.11(A)(2), 2903.11(B)

2.

*The grand jurors, on their oaths, further find and present that*:

Jade L. Petitto, on or about March 13, 2021, at the county of Ottawa aforesaid, did knowingly cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, to wit: a motor vehicle/automobile in violation of Ohio Revised Code § 2903.11(A)(2), 2903.11(B), **Felonious Assault**, F2.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio*.

{¶ 3} At Petitto's April 5, 2021 arraignment, the trial court found her indigent and appointed her counsel; Petitto then waived a reading of the applicable law and penalties and pleaded not guilty to the charges. On April 15, 2021, Petitto's retained counsel entered an appearance prompting the withdrawal of appointed counsel. On June 9, 2021, retained counsel requested leave to withdraw citing Petitto's lack of cooperation. Petitto retained a third attorney.

{¶ 4} On February 8, 2022, Petitto changed her plea to not guilty by reason of insanity and requested a psychiatric evaluation. Following a competency hearing, the trial court found Petitto competent to stand trial. Petitto subsequently made oral request for an indigency determination and appointed counsel. On June 30, 2022, Petitto was again appointed counsel.

3.

{¶ 5} At the December 2 and 22, 2022 bench trial, Ottawa County Sheriff's Sergeant Brandon Amory testified that on March 13, 2021, at approximately 1:41 p.m., he was on road patrol in a marked vehicle and observed Petitto eastbound on S.R. 2 in a vehicle with no discernable license plate. Amory activated his overhead lights and siren to initiate a traffic stop. Petitto sped away leading Amory on a high-speed chase.

{¶ 6} Travelling over 90 m.p.h., Petitto exited S.R. 2 at the S.R. 53 south off-ramp. Her vehicle "lurched" sharply to the right, up on two wheels, and came back across into Amory's lane of travel striking the front and driver's side of his vehicle and pushing both vehicles against the guardrail. Sergeant Amory testified that Petitto "continued to rev her engine at that point in time and was lurching forward, inching, stretching forward." Amory put his vehicle in reverse to disengage but Petitto "accelerated" and "smashed" into the passenger side of his vehicle. Amory stated that the impact was "definitely a jolt" but that the airbags did not deploy. He admitted that the maneuver was not necessarily directed at hitting him and that it could have been that she was trying to disengage and flee. Amory radioed an injury accident.

{¶ 7} Petitto continued northbound on S.R. 53 towards the city of Port Clinton. Sergeant Amory stated that initially his patrol vehicle failed to accelerate due to the crash but that his pursuit resumed after the engine "kicked in." Disregarding all traffic signals and driving in excess of 90 m.p.h., Petitto entered the Port Clinton city limits. She navigated a sharp curve at 60-65 m.p.h. and turned left, or northbound, at Harrison and

4.

Fremont Streets.  The chase ended following a collision between Petitto and a vehicle driven by S.R., incapacitating both vehicles.

{¶ 8} Sergeant Amory radioed a second injury accident.  He ordered Petitto out of the vehicle and handcuffed her.   He testified:

> At that point in time I kind of collapsed backwards for a second because I had gotten jolted back there at the intersection.  But my adrenaline was kicking, too, and I kind of gathered myself.  I ended up getting up at that point in time.
>
> * * *
>
> [T]he jolt had pushed me into my printer, my printer is on my console in the center for printing citations. * * * I had taken that jolt and it jolted into the side of me.  That was part of the pain into the rib area.  And at that point in time, I kind of collapsed.  A lady who was an EMT came up.  Asked me if I'm okay.  I said, I'm fine.  Go check on the other victim, basically.

{¶ 9} Amory's collapse was captured by the body cam video.  He admitted that he was medically cleared for service without any time off and that he did not take any medications.

{¶ 10} Sergeant Amory's pursuit of Petitto spanned seven to eight miles with a maximum speed of 104 m.p.h.  He stated that he did not activate his body cam until after

5.

the initial collisions. The balance of the pursuit and arrest were recorded and played for the court. Also played and admitted into evidence was surveillance video from a nearby business capturing the collision involving S.R. Photographs depicting the crash sites and damage to the vehicles were admitted into evidence.

{¶ 11} Ohio State Highway Patrol Trooper Eric Mentis responded to the second crash site. Reviewing the crash photographs, Mentis testified regarding his observations of the damage to the vehicles involved. He authored the second crash report which was admitted into evidence.

{¶ 12} Trooper Mentis took Petitto's and S.R.'s statements which were admitted into evidence. In her statement, Petitto admitted that during the incident she failed to obey all traffic signals and was not distracted by anything during the incident.

{¶ 13} The driver involved in the second crash, S.R., and her husband, T.R., testified. S.R. testified that prior to the crash she had rods and screws lining her back from multiple spine surgeries and a neck surgery to correct scoliosis. Following the accident she was bedridden for two weeks in excruciating pain and that as of the date of trial, she had chronic back pain and was still seeing an oral surgeon for pain management.

{¶ 14} S.R. stated that she saw Petitto's vehicle approach just before impact and thought she was going to die. She had no memory of the actual collision. S.R. testified that her six-month-old car was totaled and had to be replaced. T.R., S.R.'s husband,

6.

stated that the crash impacted S.R.'s mobility and limited her ability to travel. She could no longer perform any household tasks.

{¶ 15} On January 6, 2023, the trial court filed its verdict finding Petitto guilty of Counts 1-6 and dismissing Count 7 at the state's request. At Petitto's February 24, 2023 sentencing hearing, the court noted that Counts 1 and 2, as first and second-degree felonies, were subject to indefinite sentencing under R.C. 2929.144, and that Counts 3-5 merged. The state elected to proceed on Count 5.

{¶ 16} The court stated it considered the sentencing factors under R.C. 2929.11 and 2929.12. As to Count 1, felonious assault of a peace officer, the court sentenced Petitto to a prison term of 8 to 12 years; on Count 2, felonious assault, 8 years of imprisonment, to be served concurrently with Count 1. On Count 5, failure to comply with the order of a police officer, Petitto was sentenced to 36 months of imprisonment to be served consecutively to the sentences on Counts 1 and 2 for a total of 11 to 15 years of imprisonment. Petitto was fined $30 for the seatbelt violation, Count 6.

{¶ 17} The court then gave Petitto the following postrelease control notification: "You will be required to serve a mandatory five-year term of post-release control following your release from prison." The February 24, 2023 sentencing judgment entry similarly stated: "The Court explained the concepts of post release control and advised that the Defendant would be subject to a mandatory period of five (5) years of post release control upon release from prison."

7.

**{¶ 18}** This appeal followed.

## II. Assignments of Error

**{¶ 19}** Petitto raises five assignments of error for review:

Assignment of Error I: Counts One and Two of the indictment against Appellant were defective because they failed to track the language of R.C. 2903.11 naming Felonious Assault as a criminal offense and as a first and second-degree felony, respectively, in violation of Appellant's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, and Appellant's right to indictment under Article I, Section 10 of the Ohio Constitution.

Assignment of Error II: The failure of Appellant's trial counsel to file a Motion to Dismiss with respect to Counts One and Two of the Indictment constituted ineffective assistance of counsel, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

Assignment of Error III: Appellant's convictions for Felonious Assault were not supported by sufficient evidence.

Assignment of Error IV: Appellant's convictions were against the manifest weight of the evidence.

Assignment of Error V: The trial court's sentence of Appellant was contrary to law for incorrectly stating Appellant's term of post-release control.

### III. Discussion

### A. The Indictment

{¶ 20} Petitto's first assignment of error asserts that the felonious assault counts, Counts 1 and 2, in the indictment were defective because they failed to track the statutory language.

{¶ 21} Crim.R. 12(C) provides that "[p]rior to trial, any party may raise by motion any * * * objection * * * that is capable of determination without the trial of the general issue. The following must be raised before trial: * * * (2) Defenses and objections based on defects in the indictment[.]" "'By failing to timely object to a defect in an indictment, a defendant waives all but plain error on appeal. Crim.R. 12(C)(2).'" *State v. Bey*, 2019-Ohio-423, 130 N.E.3d 1031, ¶ 20 (6th Dist.), quoting *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, paragraph three of the syllabus. Petitto acknowledges her failure to raise the alleged defects in the indictment prior to trial limits her to a plain error review.

**{¶ 22}** Crim.R. 7(B) set forth the requirements of an indictment or information and relevantly provides:

> The indictment shall be signed in accordance with Crim.R. 6(C) and (F) and contain a statement that the defendant has committed a public offense specified in the indictment. * * *. The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. Each count of the indictment or information shall state the numerical designation of the statute that the defendant is alleged to have violated. *Error in the numerical designation or omission of the numerical designation shall not be ground for dismissal of the indictment or information, or for reversal of a conviction, if the error or omission did not prejudicially mislead the defendant.*

(Emphasis added.)

**{¶ 23}** "The purposes of an indictment are to give an accused adequate notice of the charge, and enable an accused to protect himself or herself from any future prosecutions for the same incident." *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 7, citing *Weaver v. Sacks*, 173 Ohio St. 415, 417, 183 N.E.2d 373 (1962), and *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985); *Horner* at ¶ 11.

> "An indictment meets constitutional requirements if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *State v. Childs*, 88 Ohio St.3d 558, 564-565, 728 N.E.2d 379 (2000), quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

*State v. Troisi*, 169 Ohio St.3d 514, 2022-Ohio-3582, 206 N.E.3d 695, ¶ 22.

**{¶ 24}** Petitto argues prejudice in the omission of the statutory penalty language in R.C. 2903.11(D)(1)(a), and the improper inclusion of R.C. 2903.11(B) (felonious assault where an accused engaged in sexual conduct without disclosing the accused's HIV positive status). Petitto claims that these errors contravene the Civ.R. 7 requirement that she be adequately notified of the charges and what the state intends to prove at trial.

11.

{¶ 25} Here, the indictment indicates that Count 1, felonious assault, was in violation of R.C. 2903.11(A)(2), and that Petitto "caused or attempted to cause physical harm" to a peace officer by the use of an automobile and that the count was a first-degree felony. Similarly, Count 2 lists felonious assault as a violation of R.C. 2903.11(A)(2) and specifies that the charge was a second-degree felony. There is no indication that the absence of the specific penalty section prejudiced Petitto as the felony degree was indicated. Further, although the inclusion of the HIV subsection was incorrect, the indictment specifies that Petitto's felonious assault charges stemmed from the use of her automobile as a deadly weapon or dangerous ordnance.

{¶ 26} Upon review, Petitto was neither prejudiced nor misled by any error or omission in the indictment and her first assignment of error is not well-taken.

{¶ 27} Petitto relatedly argues in her second assignment of error that trial counsel's failure to raise the defective indictment issue denied her effective assistance of counsel. An attorney is constitutionally ineffective where serious errors are made and the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Proof of prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

12.

{¶ 28} Because there is no prejudice as to Petitto's first assignment of error, it follows that Petitto's counsel was not ineffective in failing to raise the issue. Petitto's second assignment of error is not well-taken.

### B. Sufficiency and Manifest Weight of the Evidence

{¶ 29} Petitto's third and fourth assignments of error contend that her felonious assault convictions are based on insufficient evidence and are against the manifest weight of the evidence. The arguments are related and will be jointly addressed.

{¶ 30} "Insufficiency and manifest weight are distinct legal theories." *State v. Fenderson*, 6th Dist. Erie No. E-21-018, 2022-Ohio-1973, ¶ 73. "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 31} In contrast, when reviewing a manifest weight claim,

> "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a

13.

new trial should be exercised only in the exceptional case in which the

evidence weighs heavily against the conviction."

*Id.*, quoting *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220,

quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 32} At issue are Petitto's felonious assault convictions in violation of R.C.

2903.11(A)(2), which provides that "no person shall knowingly * * * [c]ause or attempt

to cause physical harm to another * * * by means of a deadly weapon or dangerous

ordnance." Petitto contends that the state failed to present sufficient evidence of the

knowingly, mens rea element, failed to demonstrate physical harm, and failed to prove

that Petitto's vehicle was a dangerous weapon or ordnance.

{¶ 33} R.C. 2901.22(B) defines the "knowingly" mental state as follows:

A person acts knowingly, regardless of purpose, when the person is

aware that the person's conduct will probably cause a certain result or will

probably be of a certain nature. A person has knowledge of circumstances

when the person is aware that such circumstances probably exist. When

knowledge of the existence of a particular fact is an element of an offense,

such knowledge is established if a person subjectively believes that there is

a high probability of its existence and fails to make inquiry or acts with a

conscious purpose to avoid learning the fact.

14.

{¶ 34} To prove Petitto acted knowingly, the state needed to demonstrate that serious physical harm was a reasonable and probable result of her conduct. *State v. Stevens*, 6th Dist. Lucas No. L-19-1219, 2020-Ohio-6981, ¶ 27, citing *State v. Laney*, 6th Dist. Williams No. WM-18-004, 2019-Ohio-2648, ¶ 19. Petitto's state of mind, may be "'inferred from the totality of circumstances surrounding the incident.'" *Id.*, quoting *State v. Rodriquez*, 6th Dist. Wood No. WD-02-046, 2003-Ohio-3453, ¶ 36, citing *State v. Booth*, 133 Ohio App.3d 555, 562, 729 N.E.2d 406 (10th Dist.1999).

{¶ 35} "When a defendant evades police and crashes a vehicle into a police cruiser, the defendant is usually deemed to have acted knowingly because it is likely that the officer would suffer physical harm from the collision." *State v. Wells*, 4th Dist. Washington No. 21CA16, 2022-Ohio-3793, ¶ 24, citing *State v. Taylor*, 8th Dist. Cuyahoga No. 90001, 2008-Ohio-3455, ¶ 68. *Wells* further relies on cases from the Third, Ninth, and Tenth Appellate Districts upholding felonious assault convictions where the defendant accelerated and struck or rammed a police vehicle. *See State v. Allsup*, 3d Dist. Hardin Nos. 6-10-06, 6-10-07, 2011-Ohio-405; *State v. Gibson*, 9th Dist. Summit No. 23881, 2008-Ohio-410; *State v. Beatty*, 10th Dist. Franklin No. 08AP-52, 2008-Ohio-5063.

{¶ 36} Here, as to Sergeant Amory, the evidence demonstrates that Petitto led Amory on a high-speed chase causing two collisions with his patrol vehicle. Similarly, as to S.R., Petitto, travelling at high rates of speed and disregarding traffic signals, collided

15.

with her vehicle. It is reasonable and probable that her actions would physically harm others.

{¶ 37} Petitto next argues that insufficient evidence supported a finding that her vehicle was used as a dangerous weapon when her intent was to evade police, not cause or attempt to cause physical harm.

{¶ 38} A vehicle can be a deadly weapon, "when used in a manner likely to produce death or great bodily harm." *State v. Belcher*, 6th Dist. Lucas Nos. L-13-1250, L-13-1252, 2014-Ohio-5596, ¶ 29, citing *State v. Gimenez*, 8th Dist. Cuyahoga No. 71190, *7 (Sept. 4, 1997). In determining whether a vehicle was used as a deadly weapon, "[t]he intent of the user, manner of use, and actions of the user are among the factors that must be examined." *Belcher* at ¶ 29, citing *Giminez* at *7. Intent to cause the specific harm is not required. *State v. Stevens*, 6th Dist. Lucas No. L-10-1003, 2010-Ohio-4718, ¶ 25. *See State v. Nastal*, 6th Dist. Wood No. WD-21-042, 2022-Ohio-970, ¶ 20.

{¶ 39} Here, Petitto's actions belie her argument. As previously set forth, Petitto led Sergeant Amory on a high-speed chase spanning several miles. Following the first two collisions, Petitto continued her flight toward the city limits while disregarding all traffic signals. The chase ended only after her vehicle was disabled by the third collision. Viewing the evidence in the state's favor, the dangerous weapon element was supported by sufficient evidence.

16.

{¶ 40} Petitto next contends that insufficient evidence supports the serious physical harm element as to Sergeant Amory. Petitto argues that Amory suffered only minor injuries, if any. Physical harm is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Physical harm "requires some manifestation of harm to the [victim], whether it be in the form of a visible or objective injury, or in the form of pain." *State v. Jasso*, 6th Dist. Fulton No. F-22-001, 2023-Ohio-209, ¶ 28, quoting *State v. Brown*, 6th Dist. Lucas No. L-18-1140, 2020-Ohio-1650, ¶ 20.

{¶ 41} Sergeant Amory testified that the impact of the collision "was definitely a jolt." After the chase ended and the adrenaline rush waned, Amory stated that the pain in his side from being shoved into the citation printer in the patrol vehicle console caused him to fall to the ground. This testimony was sufficient to demonstrate that Amory suffered physical harm. *See Jasso* at ¶ 29.

{¶ 42} Construing the evidence most favorably for the state, sufficient evidence supports the elements of felonious assault. This includes evidence of intent, that serious physical harm was a probable—as opposed to a merely likely—result of Petitto's conduct, and that her vehicle was properly categorized as a deadly weapon or ordnance. Petitto's third assignment of error, therefore, is not well-taken.

{¶ 43} Petitto makes near-identical arguments in support of her fourth assignment of error by arguing that her felonious assault convictions were against the manifest

17.

weight of the evidence because the evidence failed to establish the elements of intent, physical harm, and the use of a deadly weapon or ordnance.

{¶ 44} Reviewing the entire proceeding, the trial court did not lose its way or create a manifest injustice in weighing the evidence or resolving any conflicting evidence. This includes Amory's testimony that the collisions with his vehicle may have been the result of Petitto's attempt to escape, not her intent to hit his patrol vehicle and his testimony regarding whether the collisions caused him injury. The trial court was free to infer that Petitto's actions, including her high rate of speed and disregard of traffic signals, evidenced her intent to cause physical harm and the use of her vehicle as a dangerous weapon or ordnance. Sergeant Amory testified regarding the jolt caused by the collision and the body cam video depicts him falling to the ground from the pain in his side. Victim, S.R., testified as to her chronic pain and decreased quality of life resulting from the accident. Thus, Petitto's felonious assault convictions were not against the manifest weight of the evidence and her fourth assignment of error is not well-taken.

### C. Postrelease Control

{¶ 45} Petitto's fifth assignment of error is that her sentence is contrary to law due to the trial court's failure to properly impose postrelease control. The state has conceded error pursuant to 6th Dist.Loc.App.R. 10(H)

{¶ 46} "'[S]entencing errors in the imposition of postrelease control render the sentence voidable, not void, and the sentence may be set aside if successfully challenged

18.

on direct appeal.'" *State v. Sprouse*, 6th Lucas No. L-22-1230, 2023-Ohio-2983, ¶ 24, quoting *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 42. "'And if a court improperly imposes postrelease control on a sentence imposed on or after July 11, 2006, it may correct the sentence in accordance with the procedures set forth in R.C. 2929.191, which provides that a court must hold a hearing before issuing the correction.'" *Id.*, quoting *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, 21 N.E.3d 1033, ¶ 15.

{¶ 47} R.C. 2967.28(B) requires that the court impose mandatory postrelease control terms based on the degree of felony. It provides:

[A] period of post-release control required by this division for an offender shall be of one of the following periods:

(1) For a felony sex offense, five years;

(2) For a felony of the first degree that is not a felony sex offense, up to five years, but not less than two years;

(3) For a felony of the second degree that is not a felony sex offense, up to three years, but not less than eighteen months;

(4) For a felony of the third degree that is an offense of violence and is not a felony sex offense, up to three years, but not less than one year.

{¶ 48} Petitto's felonious assault conviction is a first-degree, non sex offense, felony. Thus, R.C. 2967.28(B)(2) applies and requires the imposition of a two-to-five-

19.

year postrelease control term.  Accordingly, the trial court's sentence of Petitto to a "mandatory" five-year postrelease control term was erroneous.  Petitto's fifth assignment of error is well-taken.

## IV. Conclusion

{¶ 49} For the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is affirmed, in part, and reversed, in part.  The portion of the judgment imposing postrelease control is reversed and vacated.  The remaining portions of the judgment are affirmed.  The case is remanded for the limited purpose of resentencing of postrelease control pursuant to R.C. 2929.191(C).  Pursuant to App.R. 24, costs of this appeal are to be divided evenly between the parties.

Judgment affirmed, in part,
and reversed, in part,
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Gene A. Zmuda, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.