[Cite as *State v. Dotts*, 2025-Ohio-2315.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio/City of Fremont                    Court of Appeals No.  S-24-016

    Appellee                                            Trial Court No.  23 TRC 1714

v.

Robert M. Dotts                                  **DECISION AND JUDGMENT**

    Appellant                                        Decided: June 30, 2025

* * * * *

James F. Melle, City of Fremont Prosecuting Attorney, for appellee.

James H. Ellis, III, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant, Robert Dotts, appeals a judgment of the Fremont Municipal Court, following a jury trial finding him guilty of OVI.  Because the judgment is supported by sufficient evidence and is not against the weight of the evidence and Dotts received effective assistance of counsel, it is affirmed.

## I. Facts and Procedural History

{¶ 2} On October 27, 2023, Dotts was arrested and charged with OVI following a traffic stop. The matter proceeded to a jury trial. Prior to the presentation of evidence, Dotts requested leave to call his mother as a witness. The State objected due to Dotts' failure to disclose her during discovery or on a witness list. The trial court denied Dotts' request.

{¶ 3} State's witness, Ohio State Highway Patrol Trooper Shane Spieth testified that at approximately 12:00 a.m., on October 26, 2023, in Fremont, Ohio, he observed Dotts' vehicle travelling in excess of the 25 m.p.h. speed limit; he paced the vehicle at 40 m.p.h. Trooper Spieth explained that pacing means that he ascertained the vehicle's speed by maintaining a constant speed in his patrol car and neither gaining nor falling back from the vehicle.

{¶ 4} Trooper Spieth initiated a traffic stop and walked up to the vehicle's passenger side. While speaking with Dotts, Spieth detected an odor of alcohol and observed that his eyes were bloodshot and glassy. Spieth observed a full 25 ounce can of Bud Light on the passenger seat. He told Dotts the reason he stopped him. Dotts explained that he had a new vehicle and was not used to its quick acceleration and that he had been trying to slow it back down.

{¶ 5} During the balance of his testimony, the State played Trooper Spieth's body worn camera (BWC) footage, pausing for questioning. Trooper Spieth stated that pursuant to this training, when evaluating a driver for impairment he uses the National

2.

Highway Traffic Safety Association (NHTSA) Manual, a nationwide, standardized testing protocol consisting of multiple phases. Spieth explained that the moving violation is first and that impaired drivers are more likely to commit moving violations.

{¶ 6} Next, he looks for indicators of impairment while speaking with a stopped motorist. With Dotts, he observed an odor of alcohol, bloodshot, glassy eyes, and sweating. He had thick, slurred speech. Dotts admitted to being at a bar and drinking an alcoholic beverage. His movements were slow and the paperwork fumbling evidenced a decrease in fingertip dexterity— also a sign of impairment.

{¶ 7} During this phase a motorist is also asked to divide his attention between two tasks. Here, Trooper Spieth asked Dotts to put his hands on the steering wheel. He had papers in his hands at the time which he dropped, picked up, and then put his hands in his lap forgetting about Spieth's request. As he walked around Dotts' vehicle, Trooper Spieth noticed that he put his hands down again and put them back up on the steering wheel.

{¶ 8} Trooper Spieth then had Dotts exit his vehicle in order to perform the standardized field sobriety tests including the horizontal gaze nystagmus (HGN) test, the walk and turn, the one-leg stand, and the alphabet and counting test. Spieth explained his formal training and field experience in administering the tests.

{¶ 9} Trooper Spieth testified that when administering the HGN test he looks for three clues in each eye. First, lack of smooth pursuit when tracking a pen with both eyes.

3.

Next, distinct and sustained nystagmus (involuntary jerking of the eye) at maximum deviation. Finally, nystagmus prior to 45 degrees out from the eye.

{¶ 10} Trooper Spieth stated that Dotts had difficulty completing the test. He was told multiple times to move his eyes only, not his head. Dotts scored four out of the six clues of impairment; he did not have prior to 45 on either eye. The NHTSA Manual provides that four of the six is a scientifically validated test evidencing impairment.

{¶ 11} Trooper Spieth then administered the walk and turn test. Drivers are instructed to imagine a straight line, place their left foot on the line then the right in front, heel-to-toe, walk nine steps with hands down at their sides, and then turn with a series of small steps walking back along the line. Spieth stated that the eight clues include a driver: moving their feet during the instructional period, starting the test before being told, stopping to regain balance, stepping off the line, failing to touch heel-to-toe, taking more than nine steps, incorrect turns, and raising their arms for balance. Dotts exhibited five clues of impairment during the test including moving his feet during the instructional period, failing to touch heel-to-toe, stepping off the lines while walking, using his arms for balance, and improperly turning.

{¶ 12} The one-leg stand test has four impairment clues: hopping, putting a foot down, using arms for balance, and swaying while counting. Dotts put his foot down and raised his arms.

{¶ 13} After completing the three standard tests, Trooper Spieth administered two additional tests. During the alphabet test, a driver is instructed to recite the alphabet

4.

forwards starting and ending at random letters. Trooper Spieth instructed Dotts to begin at the letter C and end at X. Dotts could not complete the test so Spieth proceeded to the counting test. He instructed Dotts to count backwards from 59 to 43. Dotts completed the test but "said multiple numbers double" and would "count up one and then he'd keep counting back."

{¶ 14} After completing the phases set forth in the NHTSA manual including the field tests, Trooper Spieth determined that Dotts was impaired. Trooper Spieth then utilized the portable breath test (PBT) as an aid in determining whether Dotts' impairment was alcohol and/or drug related. Trooper Spieth testified that Dotts failed to provide a sufficient sample for the PBT. Spieth believed that Dotts' impairment was a combination of both drugs and alcohol.

{¶ 15} Trooper Spieth arrested Dotts and transported him to the highway patrol post. Trooper Spieth offered Dotts the chance to submit to a urine test. Dotts argued with Spieth regarding the PBT results and the reason for and validity of the initial stop. Dotts ultimately refused the urine test.

{¶ 16} During cross-examination, Trooper Spieth denied observing Dotts in the bar's parking lot prior to the stop. He first saw Dotts approximately two blocks away driving in the 25 m.p.h. zone on Buchanan Avenue. Spieth paced Dotts at 40 m.p.h. prior to entering the 35 m.p.h. zone.

{¶ 17} Trooper Spieth agreed that field sobriety tests are not 100 percent dispositive of a driver's impairment. Spieth clarified that impairment is evidenced by

5.

having a certain number of clues in each test with the HGN test having the highest accuracy rate. Trooper Spieth also agreed that the odor of an alcoholic beverage alone does not evidence what or how much alcohol the driver consumed. Dotts informed Trooper Spieth that he was taking an anti-depressant, specifically a CNS depressant which can increase the effects of alcohol in the system.

{¶ 18} Trooper Spieth explained that during the PBT, Dotts initially gave an inadequate breath sample. During his second attempt, the machine started calibrating but Dotts prematurely stopped blowing and the machine again registered an inadequate sample.

{¶ 19} Defense counsel questioned Trooper Spieth about NHTSA's requirements for field sobriety testing. Speith stated that prior to the HGN test, he confirms that the driver has not suffered any recent head injuries and is not wearing hard eye contacts. Counsel then questioned Trooper Spieth's ability to observe the clues or indicators of impairment. Speith agreed that the HGN results were based on his interpretation and the clues are not discernable on the BWC footage.

{¶ 20} Counsel questioned Trooper Spieth regarding whether other explanations exist for a driver's poor performance on the walk-and-turn and one-leg stand tests. Speith stated that a driver is asked whether he or she has had any recent back or leg injuries. He agreed that an older injury could affect the test. Trooper Spieth also agreed that the terrain could impact the tests.

6.

{¶ 21} Dotts initially agreed to submit a urine sample but then hesitated. After several minutes and an extended discussion with Trooper Spieth, Dotts ultimately refused the test and Spieth marked his refusal on the paperwork. Dotts later informed him that he could not produce a sample. Trooper Spieth agreed that there was a three-hour window within which the urine sample could have been validly produced but that Dotts' refusal foreclosed the option. The State then rested.

{¶ 22} Dotts testified on his own behalf. On the morning of his arrest, he washed the exterior of his mother's duplex. He later realized that he locked himself out of the house, without his cell phone, and would have to wait until his mother got home. He continued working until after dark. He had not eaten all day and suffered from cottonwood pollen allergies.

{¶ 23} After his mother arrived home, Dotts left to get groceries. He stopped at a bar and had one regular sized beer; he had no other alcohol that day. Prior to leaving, he sat in the parking lot which was visible from the street. He observed Trooper Spieth drive by "real slow." When Dotts exited the lot, he saw Spieth turn around and follow him down State Street continuing on to Buchanan Street. Dotts said the patrol vehicle's lights went on before he crossed the railroad tracks.

{¶ 24} Dotts stated that the field sobriety tests could have been impacted by his anxiety. Dotts further stated that about 16 years ago he had a metal plate placed in his foot and could not put more than 50 pounds of weight on it. Dotts showed the surgery

7.

scars to the jury.  Dotts felt that he provided a sufficient breath sample during the second PBT.

{¶ 25} The State cross-examined Dotts regarding his prescription medications.  He did not know if any of them were contraindicated with alcohol because he paid no attention to the statements and he seldom drinks.  Dotts stated that he had not taken his medication for at least two days and had the ability to have a drink.  Dotts agreed that he initially told Trooper Spieth that he had taken his medication the night before but had not yet taken it on the night of the stop.

{¶ 26} Regarding the one-leg stand test, Dotts agreed that he could choose which leg to stand on; he chose the one with the plate because he lacked balance in the other leg.  Dotts felt that during the field sobriety testing he performed as well as possible considering his anxiety, panic and attention deficit disorders.

{¶ 27} Following deliberations, the jury found Dotts guilty of OVI.  On May 22, 2024, the court sentenced Dotts to 180 days in jail with 155 days suspended, a two-year license suspension, and a $375 fine.   This appeal followed.

## II. Assignments of Error

{¶ 28} Dotts raises two assignments of error on appeal:

> I. Appellant Was Denied Effective Assistance of Counsel By His Counsel's Failure to Make a Motion for Acquittal Under Crim.R. 29(A) and Properly Identify Appellant's Mother as a Witness Causing Her Exclusion from Trial.

8.

II. A Rational Trier of Fact Could Not Find That The State had Proven Beyond a Reasonable Doubt All of the Essential Elements of Operating a Vehicle Under the Influence in Violation of R.C. 4511.19.

## II. Analysis

### A. Ineffective Assistance of Counsel

{¶ 29} Dotts' first assignment of error asserts that his trial counsel was ineffective by failing to move for acquittal under Crim.R. 29 and properly disclosing his mother as a witness.

{¶ 30} To demonstrate ineffective assistance of counsel, Dotts must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984). He must show (1) "that his counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

{¶ 31} Dotts first contends that had trial counsel moved for an acquittal there was a reasonable probability that the court would have granted the motion. Specifically, Dotts asserts the combination of Trooper Spieth's admission that he had no reason to disbelieve that Dotts had only one beer, no physical evidence of any other drug use, and only Spieth's subjective observations of Dotts' impairment results in evidence inadequate to convict him of OVI.

{¶ 32} A Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence. *State v. Daniel*, 2023-Ohio-2800, ¶ 46 (6th Dist.), citing *State v. Messer*, 2017-Ohio-1223, ¶ 16 (6th Dist.). "A trial court's denial of a motion for acquittal under

9.

Crim.R. 29(A) "'is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'"" *Id.*, citing *Messer* at ¶ 16, quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37. "In reviewing a challenge to the sufficiency of the evidence, an appellate court views the evidence in a light most favorable to the prosecution and determines whether 'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *Messer* at ¶ 16, quoting *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). "In making that determination, the appellate court does not weigh the evidence or assess the credibility of the witnesses." *Id.*, citing *Messer* at ¶16, citing *State v. Were*, 2008-Ohio-2762, ¶ 132. "The question of whether the evidence is sufficient to support a conviction is a question of law." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 33} The State charged Dotts with OVI, R.C. 4511.19(A)(1)(a), which prohibits a driver from operating a motor vehicle while "under the influence of alcohol, a drug of abuse, or a combination of them." It is undisputed that Dotts was operating a motor vehicle at the time of the stop. Whether he was "under the influence" of alcohol and/or a drug of abuse "may be proven by eyewitness testimony, and therefore an officer is not required to conduct field sobriety or other tests in order to establish the element." *State v. Hefflinger*, 2017-Ohio-7100, ¶ 21 (6th Dist.), citing *State v. Scandreth*, 2009-Ohio-5768, ¶ 71 (11th Dist.).

{¶ 34} Here, in addition to observing Dotts' bloodshot, glassy eyes, slurred speech, and odor of alcohol, Trooper Spieth provided detailed testimony regarding the

10.

sobriety tests he performed on Dotts and the results indicating impairment. The BWC footage played by the State is consistent with Trooper Spieth's testimony. Reviewing the evidence in a light most favorable to the State, it presented sufficient evidence that Dotts operated his vehicle "under the influence." Thus, because the court would have denied the motion, trial counsel was not ineffective by failing to move for an acquittal under Crim.R. 29.

{¶ 35} Dotts next argues that trial counsel was ineffective by failing to identify his mother as a potential witness resulting in her exclusion. Under Crim.R. 16(I) parties are required to provide a list of trial witnesses and Dotts' counsel did not identify mother as a potential witness. Regardless, mother was not present at the time of the stop, she had not seen Dotts all day, she did not know whether or how much alcohol he consumed or when he last took his prescription medications. Her observation of Dotts after the fact has little relevance to whether at the time of the stop his ability to drive a motor vehicle was impaired. *See State v. Pasiecznik*, 2014-Ohio-342, ¶ 13-14 (6th Dist.). Thus, counsel was not ineffective by failing to disclose her as a witness prior to trial and Dotts did not suffer prejudice by the exclusion of her testimony.

{¶ 36} Based on the foregoing, Dotts was not deprived of the effective assistance of trial counsel and his first assignment of error is not well-taken.

## B. Manifest Weight of the Evidence

{¶ 37} In Dotts' second assignment of error, he claims that the jury lost its way due to the State's emphasis on his noncooperation and argument with the troopers on

11.

scene and at the highway patrol post. This, combined with the fact that the only evidence of Dotts' impairment were Trooper Spieth's "subjective observations" resulted in a manifest miscarriage of justice.

{¶ 38} "Insufficiency and manifest weight are distinct legal theories." *State v. Petitto*, 2024-Ohio-186, ¶ 30 (6th Dist.), quoting *State v. Fenderson*, 2022-Ohio-1973, ¶ 73 (6th Dist.). When reviewing a manifest weight claim, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lang*, 2011-Ohio-4215, ¶ 220, quoting *Thompkins*, 78 Ohio St.3d at 387. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *Thompkins* at 387.

{¶ 39} Dotts contends that the evidence based on Trooper Spieth's observations did not support his conviction. However, "the testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction." *State v. Whitman*, 2019-Ohio-2307, ¶ 62 (5th Dist.), citing *State v. Cunningham*, 2004-Ohio-7007, ¶ 51-57.

{¶ 40} Reviewing the entire record, including the BWC footage, the jury could have reasonably determined that Dotts operated his vehicle while under the influence of alcohol and/or drugs. Trooper Spieth testified that Dotts had an odor or alcohol, admitted to drinking and taking CNS anti-depressants, had bloodshot, glassy eyes and was

12.

sweating, and his field sobriety tests indicated impairment. Thus, Dotts' OVI conviction was not against the manifest weight of the evidence and his second assignment of error is not well-taken.

## IV. Conclusion

{¶ 41} For the foregoing reasons, the judgment of the Fremont Municipal Court is affirmed. Pursuant to App.R. 24, Dotts is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.
_____
                                                    _____
                                                              JUDGE

Myron C. Duhart, J.
_____
                                                    _____
                                                              JUDGE

Charles E. Sulek, P.J.
_____
CONCUR.                                             _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.